UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**JOSHUA WHISMAN,**

    **Plaintiff,**

vs.                                                                Case No: 8:20-cv-2470-T-33TGW

**REGYMEN FITNESS, LLC,**
**EDWARD NAVAN, an individual,**
**DONALD JARREAU, an individual,**

    **Defendants.**
_____/

## SECOND AMENDED COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND DEMAND FOR JURY TRIAL

**COMES NOW**, Plaintiff JOSHUA WHISMAN, by and through his undersigned counsel, hereby files this Complaint and Demand for Jury Trial against Defendant REGYMEN FITNESS, LLC ("Defendant REGYMEN" or "REGYMEN"), Defendant EDWARD NAVAN ("Defendant NAVAN" or "NAVAN"), and Defendant DONALD JARREAU ("Defendant JARREAU" or "JARREAU"), and states as follows:

INTRODUCTION

This is an action, in excess of $75,000 with diverse parties, for damages, injunctive relief, and declaratory relief to address Breach of Contract, Breach of the Implied Duty of Good Faith and Fair Dealing, Unjust Enrichment, violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fraudulent Inducement, violation of Florida's Private Whistleblower Act, section 488.102, Florida Statutes ("FPWA"), and Defendant's prior breach rendering restrictive covenants void. In their improper efforts to remain competitive in business, Defendants

violated the law, including but not limited to duping Plaintiff out of earned equity ownership and a substantial amount of severance pay for which he is contractually owed.

## JURISDICTION, VENUE, AND PARTIES

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the parties are diverse, as well as supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2. Venue is proper as Plaintiff is currently a citizen and resident of the State of Florida and resided in Florida, primarily Pinellas County, during a substantial number of events resulting in the accrual of his claims.

3. Further, Plaintiff is a covered individual under the applicable common laws, FDUTPA, and FPWA.

4. Defendant REGYMEN is a manager-managed limited liability company (with no company members), a citizen of the State of Louisiana, and organized under that state's laws. Donald M. Jarreau, Jr., a citizen of the State of Louisiana, serves as Defendant REGYMEN's Manager and sole limited liability company officer.

5. Defendant REGYMEN was Plaintiff's employer within the scope of the FDUTPA, the FPWA, and the applicable common laws during the times relevant to the facts within this Complaint.

6. At all times material hereto, Defendant NAVAN has been a co-founder of REGYMEN, has been a citizen of the State of Louisiana, and had the authority to determine and impact the terms and conditions of Plaintiff's employment, including determining and remitting compensation, equity ownership, and terminating his employment.

7. At all times material hereto, Defendant JARREAU has been a co-founder and Chief

Executive Officer of REGYMEN, has been a citizen of the State of Louisiana, engaged in day to day operations, and with the authority to determine and impact the terms and conditions of Plaintiff's employment, including determining and remitting his compensation, exercising discretion whether to perform the terms and conditions of Plaintiff's Employment Agreement, and terminating his employment.

## STATEMENT OF FACTS

8. Plaintiff began employment with Defendant REGYMEN on July 14, 2017 as a Director of Program Design & Technologies and was "laid off" on April 20, 2020. Defendant REGYMEN told Plaintiff he was laid off for reasons related to COVID-19. However, Plaintiff's position was the only one eliminated although COVID-19 similarly impacted the entire fitness industry.

9. During the first half of July in 2017, Plaintiff left his job with an established nationwide fitness company to work at a start-up company called Regymen Fitness, which was a rebrand of a company called Redzone.

10. Plaintiff agreed to a reduction in pay to get a 1% ownership interest of the company and 12.5% ownership interest of a studio with the ability to buy 12.5% more at cost within one year of being open.

11. Although Plaintiff had been offered a pay raise to ninety-two thousand dollars ($92,000.00) annually for a nearly identical position with the established nationwide fitness company, Plaintiff chose the lower paid seventy-seven thousand dollars ($77,000.00) annually position with Regymen Fitness because of the contractually agreed upon ownership interest.

12. Defendant Edward Navan negotiated the terms with Plaintiff, and Defendant Donald Jarreau gave his approval and executed in his capacity as Chief Executive Officer.

13. Specifically, on July 5, 2017, Defendant NAVAN assured Plaintiff that although his salary would be only $77,000.00 per year "to start, there will be more ways to make money."

14. During the same time period, Defendant NAVAN further assured Plaintiff that 1% ownership interest was currently worth approximately $30,000.00.

15. On July 14, 2017, Plaintiff signed the Employment Agreement and returned it (Hereinafter referred to as the "Agreement" and attached hereto as Exhibit A.).

16. Specifically, paragraph 5 of the Agreement stated Plaintiff would receive an initial monthly salary of $4,167 per month for the first four months, which would increase to $5,417 beginning thereafter, and a $12,000.00 annual stipend "for living expenses and other related items." Plaintiff also "may receive bonus for achieving certain goals and quotas for opening of Regymen License or franchise."

17. Paragraph 11 of the Agreement promised that Plaintiff will be given 1% of Regymen Fitness stock from company ownership after 24 months of employment. If the company is sold before the 24 months, then employee shall receive its 1% stock ownership.

18. Paragraph 12.1 of the Agreement further stated "[w]ithin or at 24-months of employment with the company, company shall open a Regymen Fitness Franchise and the employee will be given a 12.5% interest in ownership. Employee may have one year of opening to acquire another 12.5% ownership at the cost to open the said franchise."

19. Paragraph 12.2 of the Agreement promised that Plaintiff "shall be paid 90 days severance pay if employee is laid off through no fault or wrong doing of employee."

20. On July 14, 2017 Defendant NAVAN further stated that the 12.5% ownership was not preconditioned on any identified performance or financial goals beyond what had already been identified within the Employment Agreement.

21. In June 2019 Plaintiff relocated to St. Petersburg, Florida, to oversee what had been promised as the new Regymen studio as well as new Regymen corporate offices that were in process of planning and building.

22. On July 3, 2019, Defendant NAVAN wrote the following to Plaintiff:

> "FYI, 90% closed on st Pete spot, working on floor plan now. Goal is to drag out lease negotiations so when we sign, we start build within 2-weeks. [. . .] It's in the Publi[x] shopping center on 4th/38th, Cali burrito is in there, next to Office Depot. [ . . . ] Great spot, residential corridor! So much going on, got a call from Cyclebar and pure barre VC groups as well, we are about to EXPLODE over next 12 months, hard to keep focused, but we need to do small things right, as we have big things covered. [ . . . ] I know it's taken a little longer, and had some frustrations, but everything I told you we were going to do is happening, and the place I promised to position you is happening. Time to hit the road and see some stuff, have some fun overall and create something amazing!"

23. On July 14, 2019, Plaintiff had been employed for exactly 24 months of employment. However, the promises within the Agreement had not been delivered and were no longer in the process of being delivered.

24. On September 28, 2019, Chief Operations Officer Nick Binnings engaged in an email conversation with Plaintiff where Plaintiff was also promised pay raises, bonuses, and stock payouts due to an impending business relationship with Goodlife. Specifically, Mr. Binnings wrote:

> Josh
> Received your email. Below is the communication on the lease. Donnie [Defendant JARREAU] and I have a call with his attorney Monday to give approval for Publix to send the lease. EK [Defendant NAVAN] has secured funding and we are moving forward.
> [Goodlife Fitness] is looking good and I feel we will get a deal done with them in the next two weeks. Once Donnie [Defendant JARREAU] and Patch agree, then the documents will come out. This will be a funding deal to help us grow and they are not paying a lot for stock. I hope to see a small bonus given and we will get all our official documents with stock options and such. We will also get everyone's salary where it needs to be. Same as I have said before, I really feel all this will be done and complete by the end

> of the year. I have insurance quotes ready for Donnie [Defendant JARREAU] as well.
> All in all, everything I have been saying is coming together. I do not see anything that has thrown us off and now it is just taking time to get this complete. I truly feel your frustration and pain and hope that you can see all that is happening and can hang in there until the end of the year.
> Keep you posted once I get more info.
> Thanks!
>
> I think we are getting St Pete off the ground now and that is where your studio ownership will be. If you feel different, then you are welcome to reach out to them direct and discuss.
> Salary, I am still working on that, but I am including insurance and creating a bonus structure so that once RF, LLC is profitable, we all seek the rewards.
> I can say that the salaries will be on industry par for sure!
> Thanks Josh!!

25. Unfortunately, the promises made on September 28, 2019 were not kept even though Defendant REGYMEN entered into a fruitful business relationship with Goodlife Fitness during January 2020 or thereabouts.

26. The final terms of the January 2020 deal with Goodlife Fitness were not disclosed to Plaintiff although per the Agreement he had earned an ownership interest during that time.

27. After the deal closed, Defendant JARREAU pulled the plug on Regymen Fitness location in St. Petersburg and blamed it on Goodlife.

28. Although certain employees received bonuses and raises during the time period after Regymen's Goodlife deal, Plaintiff received none, including what was promised to him within the Agreement.

29. During the week of January 24, 2020, Plaintiff requested to meet and met with the ownership group to discuss the tardiness in opening the studio in which Plaintiff contractually owned a percentage per paragraphs 11 and 12.1 of Exhibit A. As such, Plaintiff objected to Defendant Regymen's practices that violated the terms of his Employment Agreement. Plaintiff also stated he had not been compensated as promised in the September 28, 2019 emails although

Defendant Regymen had unfairly benefited from his work performance.

30. Within days of the meeting with the ownership group, the Plaintiff received a letter dated January 24, 2020 from the Ownership Team denying him any additional compensation and/or any ownership interest as had been promised within twenty-four (24) months of employment and detailed in paragraphs 11 and 12.1 of the Agreement. The letter also announced that Plaintiff would be moving into a different role within 60 days or less.

31. Because the Ownership Team's response did not make efforts to honor several of the terms and conditions within the Agreement pertaining to compensation owned and his rights as an owner, Plaintiff informed the Ownership Team they all ought to seek legal assistance in order to resolve the matter. Plaintiff also inquired about an option to be bought out but the Ownership Team remained unresponsive.

32. In March of 2020, Plaintiff's pay was reduced to 75%.

33. In mid-April of 2020, Plaintiff's pay was reduced to 50%.

34. On April 20, 2020 Plaintiff received a termination notice sent to him by Vice President Leah Seacrest. The letter stated Plaintiff was being fired at no fault of his own and would receive 90 days of severance starting May 1, 2020.

35. The April 20, 2020 termination letter therefore assured compliance with paragraph 12.2 of the Agreement that Plaintiff shall receive 90 days of severance payments.

36. The April 20, 2020 letter further stated that the termination decision was not related to the quality of his work and assured a positive employment reference to future employers.

37. Unfortunately, the severance payments Plaintiff received included a deduction for insurance coverage and yet Plaintiff later learned to his detriment that his insurance had been cancelled. Further, Plaintiff received partial pay as he was not paid the living expenses portion of

his compensation package. For example, his normal take home pay was $2,464.58 and yet his severance payments were for $2,076.77.

38. After his termination, Plaintiff also received a Severance Agreement that did not honor the ownership interest promised to Plaintiff within the Agreement. Plaintiff made several attempts to bring the non-compliance to the attention of Defendant REGYMEN's inhouse attorney Tom O'Keefe, but was unsuccessful and instead met with hostility and bullying tactics.

39. On June 1, 2020, instead of honoring the terms of the Agreement within the Severance Agreement Defendant REGYMEN retaliatorily cut off Plaintiff's severance payments. Plaintiff only received two out of the six severance payments that were promised by Defendant REGYMEN and to which they were contractually obligated.

40. During the first twenty-four (24) months of Plaintiff's employment, Defendant Regymen opened six (6) corporate locations but did not assign Plaintiff as contractually promised. Further, during that same time period Defendant Regymen chose not to open a St. Petersburg location.

41. For the foregoing reasons, Plaintiff has been damaged as a result of Defendants' violations of the FDUTPA, the FPWA, and the applicable common laws.

COUNT I – BREACH OF CONTRACT – AGAINST DEFENDANT REGYMEN

42. Plaintiff re-alleges paragraphs 1 through 41.

43. Defendant failed to perform its duty to Plaintiff as identified within paragraphs 5, 11, and 12.1 of the Agreement. Plaintiff was not given 1% of Regymen Fitness stock from company ownership after 24 months of employment. When Plaintiff inquired regarding documentation demonstrating his ownership, he was merely ignored and then denied.

44. Defendant also failed to honor its contracted promise that "[w]ithin or at 24-months

of employment with the company, company shall open a Regymen Fitness Franchise and the employee will be given a 12.5% interest in ownership. Employee may have one year of opening to acquire another 12.5% ownership at the cost to open the said franchise." When Plaintiff inquired regarding documentation demonstrating his ownership, he was merely ignored and then denied.

45. Further, Defendant REGYMEN terminated Plaintiff's employment on or about April 20, 2020 and failed to pay Plaintiff severance as contracted in 12.2 of the Agreement (*See* Exhibit A).

46. Defendant REGYMEN has failed to pay amounts due and owing pursuant to the terms of the Agreement, which constitutes a material breach of the agreement and for which Plaintiff has suffered damages.

47. At all times, Plaintiff complied with all pre-requisites within the Agreement during the relevant time period.

48. Plaintiff was injured due to Defendant's willful violations of the Agreement, including but not limited to failing to pay his severance as contractually required.

49. Plaintiff is entitled to legal and injunctive relief as a result of Defendant's actions.

**WHEREFORE**, Plaintiff demands:

    a. Compensation for lost severance, lost wages, benefits, and other remuneration;

    b. Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative front pay;

    c. Specific performance;

    d. Compensatory damages, including emotional distress, as allowable by law;

    e. Prejudgment interest on all monetary recovery obtained;

  f.  All costs and attorney's fees incurred in prosecuting these claims pursuant to section 448.08, Florida Statutes; and

  g.  All further relief as this Court deems just and equitable.

## COUNT II – BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING – AGAINST DEFENDANT REGYMEN

50. Plaintiff re-alleges paragraphs 1 through 49.

51. Defendant used manipulative devices to avoid compensating Plaintiff as contractually required and then terminating Plaintiff's employment as a further effort to deny payment to Plaintiff.

52. A duty of good faith and fair dealing is implicit in all enforceable contracts under the law, and implied in the performance of every term of an express contract.

53. Defendant's refusal to compensate Plaintiff as contractually required, attempting to require Plaintiff to agree to substantially less favorable terms and conditions under duress and through use of other manipulative devices, and termination of Plaintiff's employment under false pretenses constitutes bad faith and unfair dealing.

54. Plaintiff has been and continues to be injured by Defendant's bad faith and unfair dealing.

  **WHEREFORE**, Plaintiff demands:

  a.  Compensation for lost severance, lost wages, benefits, and other remuneration;

  b.  Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative front pay;

  c.  Compensatory damages, including emotional distress, allowable at law;

  d.  Prejudgment interest on all monetary recovery obtained;

  e.  All costs and attorney's fees incurred in prosecuting these claims pursuant to section 448.08, Florida Statutes; and

  f.  All further relief as this Court deems just and equitable.

COUNT III – FRAUDULENT INDUCEMENT<br>AGAINST ALL DEFENDANTS

55. Plaintiff re-alleges paragraphs 1 through 54 as if fully alleged herein.

56. At all times, Plaintiff complied with prerequisites of the Agreement during the relevant time period.

57. At all times during employment, Plaintiff relied on Defendant NAVAN and Defendants JARREAU's representations to also be imputed to Defendant REGYMEN.

58. At all times during employment, it was reasonable to believe that Defendants were authorized to make representations to Plaintiff with regard to compensation and other material terms of employment.

59. At all times the amount and type of compensation was a material fact in the representations made by all Defendants and in the negotiations between Plaintiff and NAVAN, and Plaintiff and JARREAU.

60. Defendants REGYMEN, JARREAU, NAVAN made fraudulent misrepresentations to Plaintiff regarding appropriate compensation for work performed, as well as the security of his employment status.

61. All Defendants intended for their representations to induce Plaintiff to continue performing job duties for contractually required and promised compensation and company ownership while also intending to terminate his employment at a specific date and time in an effort to avoid actually performing the terms and conditions of the enforceable and binding contract (the Agreement).

62. Defendants REGYMEN and JARREAU knew that certain material terms of employment like compensation and duration of employment were communicated to Plaintiff falsely because Defendant JARREAU is REGYMEN's final decisionmaker with regard to staffing, compensation, restructuring, material terms and conditions of any contractual agreement, and other substantial business decisions.

63. Defendants REGYMEN, JARREAU, and NAVAN knew that certain material terms of employment like compensation and ownership were communicated to Plaintiff falsely because they had access to the company's business dealings, budget, and financial records, among others.

64. Plaintiff was harmed to his detriment by justifiably and reasonably relying on Defendants misrepresentations when Plaintiff continued to perform according to contracted terms in order to receive compensation in accordance with its terms and yet he did not receive such compensation.

65. Plaintiff has incurred damages including but not limited to unpaid compensation and corporate ownership from Defendants REGYMEN and JARREAU.

66. Defendants REGYMEN and JARREAU knew they never had the intention of honoring Plaintiff's ownership rights as contracted within the Agreement, of compensating Plaintiff as promised and upon which he detrimentally relied, and of honoring the terms and conditions of the Agreement in full although the Agreement remained a valid and enforceable contract under which Plaintiff had performed all necessary conditions precedent for such compensation.

67. Each misrepresentation was a material term known by Defendants to be false.

68. Each misrepresentation was made for the specific purpose of inducing Plaintiff to

rely upon it.

69. Plaintiff was justified in relying on Defendants' misrepresentations.

70. Due to the misrepresentations of Defendants REGYMEN, JARREAU and NAVAN, Plaintiff has sustained injury as a direct result of his reliance. Plaintiff has experienced considerable hardship in loss of compensation, continued unemployment, and has suffered substantial damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants for:

    a. Equitable relief, including lost wages (including unpaid severance);

    b. Compensatory damages, including but not limited to pain and suffering damages as allowable by law;

    c. Special damages;

    d. Punitive damages;

    e. Court costs and attorney's fees and costs and interest; and

    f. Any such other relief as the Court may deem necessary and proper.

## COUNT IV – UNJUST ENRICHMENT – AGAINST DEFENDANT REGYMEN and DEFENDANT JARREAU

71. Plaintiff re-alleges paragraphs 1 through 49.

72. Defendants obtained benefit from Plaintiff for his services and failed to adequately compensate him for those services.

73. By terminating Plaintiff's employment through manipulative devices and failing to compensate Plaintiff as required, Defendants have been unjustly enriched.

**WHEREFORE**, Plaintiff demands:

    a. Compensation for lost ownership, severance, wages, benefits, and other remuneration;

      b.      Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative front pay;

      c.      Compensatory damages, including emotional distress, as allowable by law;

      d.      Prejudgment interest on all monetary recovery obtained;

      e.      All costs and attorney's fees incurred in prosecuting these claims; and

      f.      All further relief as this Court deems just and equitable

<u>COUNT V – CONVERSION – AGAINST DEFENDANT REGYMEN and DEFENDANT JARREAU</u>

74.      Plaintiff re-alleges paragraphs 1 through 49.

75.      Defendant misappropriated, diverted, and otherwise mismanaged earned ownership interest and monies to which Plaintiff has a possessory right.

76.      As set forth above, by wrongly appropriating ownership interest and financial proceeds that contractually had become the property of Plaintiff, Defendants unlawfully converted Plaintiff's property for own use.

77.      These above-described acts and practices of Defendants while employed by Plaintiff have injured and continue to injure Plaintiff.

78.      Defendants' practices were self-serving and deceptive, and Plaintiff has suffered damages as a result.

79.      Plaintiff is entitled to legal and injunctive relief as a result of Defendants' actions.

**WHEREFORE**, Plaintiff demands:

      a.      Compensation for lost ownership interest and other remuneration;

      b.      Compensatory damages, including emotional distress, allowable at law;

      c.      Punitive damages;

      d.      Prejudgment interest on all monetary recovery obtained;

  e.  All costs and attorney's fees incurred in prosecuting these claims; and

  f.  All further relief as this Court deems just and equitable

## COUNT VI – FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT VIOLATION - AGAINST DEFENDANT REGYMEN

80. Plaintiff re-alleges paragraphs 1 through 49 and 55 through 70.

81. Section 501.204(1), Florida Statutes, provides that "unfair or deceptive practices in the conduct of any trade or commerce are hereby declared unlawful." The provisions of the act shall be "construed liberally to promote the protection" of the "consuming public and legitimate business enterprises from those who engage in…deceptive or unfair acts or practices in the conduct of any trade or commerce." Section 501.202, Florida Statutes.

82. Defendant was, at all times material to the allegations herein, engaged in "trade of commerce" as defined by the Section 501.203, Florida Statutes.

83. Defendant engaged in prohibited practices in an effort to increase its ability to compete in the business marketplace.

84. Defendant illegally failed to compensate Plaintiff as contractually required in an effort to increase its ability to compete in the business marketplace.

85. Defendant's business practices were unfair and deceptive, and Plaintiff has suffered damages as a result.

86. Plaintiff has suffered actual damages.

87. Plaintiff is entitled to legal and injunctive relief as a result of Defendant's actions.

**WHEREFORE**, Plaintiff demands:

  a.  An order forcing Defendant to stop its unlawful practices or acts;

  b.  Compensation for lost ownership interest, severance, wages, benefits, and other remuneration;

c. Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative front pay;

d. A court declaration that Defendant's harmful practice is a violation of the statute.

e. Compensatory damages, including emotional distress, allowable at law;

f. Prejudgment interest on all monetary recovery obtained;

g. All costs and attorney's fees incurred in prosecuting these claims; and

h. All further relief as this Court deems just and equitable.

## COUNT VII –VIOLATION OF FLORIDA'S PRIVATE WHISTLEBLOWER ACT, FLORIDA STATUTES §448.102 (RETALIATION) – AGAINST DEFENDANT REGYMEN

88. Plaintiff re-alleges paragraphs 1 through 49.

89. In January of 2020 Plaintiff voiced objection to the Ownership Team, including Defendants REGYMEN and NAVAN, that he was not being compensated as previously agreed and that his ownership rights were also being violated.

90. After the Ownership Team denied Plaintiff's attempts to remedy Defendant's non-compliance, Plaintiff suggested they all seek out legal assistance in order to agree upon a resolution.

91. As a result of Plaintiff's opposition to the violation of his legal rights to compensation, ownership, and ownership rights, the Ownership Team moved Plaintiff to a less prestigious and lower paid role.

92. In March, the Defendant reduced Plaintiff's compensation to 75% of what had been agreed upon.

93. In April, the Defendant reduced Plaintiff's compensation to 50% of what had been agreed upon.

94. On April 20th, Defendant terminated Plaintiff's employment for pretextual reasons. The real reason was retaliation, and Plaintiff was the only individual laid off at that time.

95. Although Plaintiff initially received severance pay, once Defendant REGYMEN learned that Plaintiff had retained counsel to assert his legal rights, Defendant ceased making severance payments to Plaintiff in an act of retaliation.

96. Such retaliatory acts rendered Plaintiff deprived of earned wages pursuant to section 488.01(2), Florida Statutes, as well as unjustly enriching Defendant REGYMEN and JARREAU.

97. Plaintiff opposed Defendant's violation of a law, rule, or regulation on at least one occasion, and as such engaged in activity legally protected pursuant to the FPWA.

98. Defendant then terminated Plaintiff's employment within three months of Plaintiff's instance(s) of legally protected activity.

99. As such, Plaintiff's legally protected activity and resulting employment termination are temporally proximate; a causal connection exists.

100. Plaintiff's legally protected activity is at least a but-for cause of Defendant REGYMEN terminating his employment.

101. Further, terminating Plaintiff's employment due to COVID-19 did not make sense as Plaintiff performed several vital operational roles for Defendant REGYMEN, and yet was the only individual laid off. As such, Plaintiff's employment was terminated for pretextual reasons.

102. Defendant thus illegally retaliated against Plaintiff for his protected activity, violating the FPWA.

103. Plaintiff has been injured and continues to experience injury as a result of Defendant's retaliation in violation of the FPWA.

**WHEREFORE,** Plaintiff demands:

a. Compensation for lost wages, including severance, benefits, and other remuneration;

b. Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative front pay;

c. Compensatory damages, including emotional distress, allowable at law;

d. Punitive damages;

e. Prejudgment interest on all monetary recovery obtained;

f. All costs and attorney's fees incurred in prosecuting these claims; and

g. All further relief as this Court deems just and equitable.

## COUNT VIII - VOID OF RESTRICTIVE COVENANT Against Defendant REGYMEN

104. Plaintiff re-alleges and references each and every allegation contained in the preceding Paragraphs 1 through 54, and incorporates the same as set forth fully herein.

105. Plaintiff's Agreement contained restrictive covenants. *See* Exhibit A at paragraph 7.

106. Defendant's breach of the Agreement constitutes a prior breach which precludes the Defendant from seeking enforcement of the restrictive covenants.

107. The Plaintiff seeks the court's declaratory judgment that these provisions of the Agreement are void in this regard. Declaratory relief is recognized to be a valid means by which to determine the enforceability of restrictive covenants. *See Argus Photonics Group, Inc. v. Dickenson*, 841 So.2d 598 (Fla. 4th DCA 2003) and Florida Statute § 86.011.

108. As set forth in Florida Statute § 86.011, the Court has the power to render

declaratory judgment on the existence of any right or "[o]f any fact upon which the existence or nonexistence of such ... right does or may depend, whether such immunity, power, privilege, or right now exists or will arise in the future." Id.

109. Plaintiff seeks declaratory judgment that the restrictive covenants contained in the Agreement therein are invalid and/or void.

**WHEREFORE,** Plaintiff prays for entry of a declaratory judgment stating:

a. Defendant's restrictive covenants in the Agreement are void as an illegal restraint on trade;

b. Granting such supplemental relief as Plaintiff shall be entitled, including damages and such injunctive relief as may be necessary to enforce and effectuate the Court's judgments and decrees, and

c. Awarding costs, attorney's fees, and such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable.

Dated November 10, 2020.

Respectfully submitted,

FERNEE KELLY LAW

s/ Charlotte Fernée Kelly
Charlotte Fernée Kelly, Esq.
FBN: 0090105
Fernee Kelly Law
1228 E 7th Ave, #200
Tampa, FL 33605
Tel: (813) 315-3981
charlotte@ferneekellylaw.com